[799 NYS2d 511]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILFREDO MOYETT, Appellant.

First Department, August 11, 2005

APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Mark W. Zeno* of counsel), for appellant.

*Robert T. Johnson, District Attorney*, Bronx (*Leilani J. Rodriguez* and *Nancy D. Killian* of counsel), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

The only substantive claim on appeal is the excessiveness of sentence, an issue that can be reached only on a finding that defendant's waiver of his right of appeal is invalid. Contrary to our concurring colleague's view, we find that the record is sufficient to show that defendant knowingly, intelligently and voluntarily waived that right.

It is well-settled, as the concurrence recognizes, that the right to appeal may be waived as a condition of a plea bargain (*People v Seaberg*, 74 NY2d 1, 9 [1989]; *see People v Callahan*, 80 NY2d 273, 279-280 [1992]). Such a waiver must be knowingly, intelligently and voluntarily made (*see Callahan*, 80 NY2d at 283). The validity of such a waiver is determined by an examination of the record to assure that the prerequisites of waiver have been met (*id.*). The plea-taking court "must at least satisfy itself on the record that the waiver complies with the procedural and integrity-of-process safeguards" set forth by the Court of Appeals (*People v Calvi*, 89 NY2d 868, 871 [1996]). In that regard, there is no requirement that any particular litany of questions be used to satisfy the standard for eliciting such a waiver (*Callahan*, 80 NY2d at 283).

Furthermore, a general waiver of the right of appeal encompasses the right to appeal a sentence as harsh or excessive (*People v Hidalgo*, 91 NY2d 733 [1998]). A valid waiver of appeal also forecloses this Court's interest-of-justice review (*see e.g. People v Rosario*, 269 AD2d 187 [2000], *lv denied* 94 NY2d 952 [2000]; *People v Dong Chong*, 247 AD2d 211 [1998], *lv denied* 91 NY2d 971 [1998]).

Here, the plea-taking court recited in great detail the terms of the plea and the promised sentence. Early in the plea allocution, the court advised defendant that he could confer with his lawyer as to any question before answering. Defendant acknowledged that he understood. The court asked defendant separately if he had spoken with his lawyer about the case and about pleading guilty, and whether he was satisfied with his lawyer's services. To each inquiry, defendant responded "yes."

Before accepting the guilty plea, the court again ascertained from defendant that he had spoken with the lawyer about pleading guilty and that he understood that by pleading guilty he was giving up his rights to remain silent and not incriminate himself. Then, after the prosecutor's detailed recitation of the facts underlying the charges, defendant answered "yes" to the court's question as to the truth of those facts. Next, the court posed separate questions to defendant as to whether he understood that when he pleads guilty, he is giving up his right to a hearing to suppress any physical evidence, any statement by him or identification testimony and his right to a trial by jury. As to each, defendant answered "yes." The court also asked defendant whether he understood that he was giving up his right to cross-examine the prosecutor's witnesses and his right to call witnesses on his behalf and to testify himself. He stated "yes" to those questions. The court again advised him of his rights to remain silent and not incriminate himself. The court further advised him of his right to a trial by jury, whose verdict had to be unanimous, and that at such trial his guilt had to be proven beyond a reasonable doubt. Defendant stated that he understood those rights and that he was relinquishing them by pleading guilty. He stated further that he understood that a plea of guilty had the same effect as a guilty verdict. Finally, after this lengthy and comprehensive allocution, the court asked defendant, in a separate question, whether he understood that by pleading guilty he was giving up his right to appeal the conviction. Defendant answered "yes."

The court then reiterated the promised sentence and advised defendant that if it were unable to fulfill the sentence promise, it would give defendant his "plea back." The court also advised defendant that his present conviction could be used to impose additional punishment if he were convicted of a new crime in the future and, in concluding, elicited from him that he was, in his own words, pleading guilty of his "[o]wn free will." It should also be noted that defendant, over 23 years of age, had a prior felony conviction and was not a stranger to the criminal justice system.

In our view, as the record demonstrates, this was a thoughtful, extensive and comprehensive plea allocution by a patient and experienced trial judge, who elicited an admission to a detailed account of the crime and painstakingly secured defendant's consent to the waivers of the various rights accorded him in a criminal prosecution, including a waiver of the right to appeal.

Defendant's argument, with which the concurrence agrees, that the court failed to assure itself that defendant understood what it meant to give up his right to appeal, is belied by the record. As indicated, the court went to great lengths to ensure that defendant understood the rights he was waiving. It is well established that "trial courts are not required to engage in any particular litany during an allocution in order to obtain a valid guilty plea in which defendant waives a plethora of rights" (*People v Moissett*, 76 NY2d 909, 910-911 [1990]). And, as previously noted, a generalized waiver of the right to appeal, unless specifically limited, will preclude appellate review of all issues, including excessiveness of the sentence (*People v Hidalgo*, 91 NY2d 733 [1998], *supra*; *see People v Smith*, 142 AD2d 195, 199 [1988], *affd* 74 NY2d 1 [1989]).

There is nothing in the record to indicate, as the concurrence suggests, that the court created the impression that the waiver of the right to appeal was an automatic consequence of pleading guilty. The question as to the waiver of that right was independently and separately asked and unequivocally answered. But, even if the waiver of the right of appeal were part of the panoply of waivers associated automatically with the entry of a guilty plea, it would not affect the validity of the waiver as long as the defendant, by specific question and answer, knowingly, intelligently and voluntarily waived that right. In that regard, it should be noted that, after imposing the promised sentence, the court instructed the clerk as follows: "Even though the defendant waived his right to appeal as part of this plea negotiation, would you advise him of his right to appeal."

Apparently, the concurrence would require a series of questions of the defendant to establish an adequate record for appellate review of his voluntary and knowing waiver of the right of appeal, a right that is, of course, statutory (*see* CPL 450.10; *People v Seaberg*, 74 NY2d at 7), not constitutional. Not even the waivers of the right to trial by jury and to confront the People's witnesses—rights explicitly granted by the federal and state constitutions (US Const 6th Amend; NY Const, art I, § 6)—require such an expansive exposition (*see e.g. People v Harris*, 61 NY2d 9 [1983]).

The questions "Do you also understand that by pleading guilty you give up your right to appeal the conviction in this case? Do you understand that?" are clear and unambiguous to any layperson. In the context of this plea allocution, they require no further explanation. After all, to the average layperson, a

plea of guilty signals the end, not the beginning of litigation (*see People v Prescott*, 66 NY2d 216, 219-220 [1985], *cert denied* 475 US 1150 [1986]), especially where, as here, there are no constitutional speedy trial issues or suppression rulings, which survive a guilty plea, for appellate review (*People v Green*, 146 AD2d 281, 283, 284 [1989], *affd* 75 NY2d 902 [1990], *cert denied* 498 US 860 [1990]).

As we read the concurrence, although it concedes that no particular litany of questions is required to establish a knowing and voluntary waiver of the right of appeal (*People v Callahan*, 80 NY2d at 283), it presumes the inadequacy of the waiver in the absence of further questioning on the subject by the court or defense counsel. Fortunately, this is not the prevailing law.

In the countless appeals we have heard challenging the validity of the waiver of the right of appeal, rarely have we seen a record so amply revealing a knowing, intelligent and voluntary waiver of a defendant's rights, including the right to appeal. In light of such a record, this is hardly the case to cite as an example of a faulty waiver.

Finally, were we to reach the issue, we would find there is no basis upon which to reduce the sentence.

Accordingly, the judgment of the Supreme Court, Bronx County (Roger S. Hayes, J.), rendered August 28, 2002, convicting defendant, upon his plea of guilty, of robbery in the first degree, and sentencing him, as a second felony offender, to a term of 10 years, should be affirmed.

MARLOW, J. (concurring). On December 23, 2000 at about 4:00 A.M., in Bronx County, defendant invaded the front passenger seat of a 1999 Cadillac and demanded money from its driver. Defendant's accomplice jumped into the back seat and slammed a shotgun into the driver's face, injuring him. The driver escaped on foot, and defendant and his cohort sped away, leading the police on a high speed car chase through vehicle and pedestrian traffic, running red lights, crossing lane dividers, and speeding. Along the way, defendant crashed into two cars, one with three passengers, causing personal injury. The police apprehended him and recovered $200 of the driver's money.

On November 26, 2001, in satisfaction of a multicount indictment, defendant pleaded guilty to robbery in the first degree with the understanding that as a second felony offender he would receive a determinate sentence of 10 years, plus five years' postrelease supervision. The court made that promise af-

ter defense counsel urged the minimum eight-year sentence and the People recommended 12 years.

In his plea allocution, defendant expressed satisfaction with counsel's service and said he understood he was giving up his right to silence and against self-incrimination by his plea. After reviewing the facts, the court advised defendant that if he did not plead guilty, he would have a right to suppression hearings. Defendant acknowledged he understood all the usual rights associated with a jury trial in a criminal case. Defendant responded in the affirmative when the court then asked: "Do you also understand that by pleading guilty you give up your right to appeal the conviction in this case?" The court also ascertained that no off-the-record promises or threats induced defendant to plead guilty, a plea he acknowledged entering of his own free will. The court arraigned and adjudicated defendant as a predicate felon.

The court then imposed the promised sentence. Although the court noted that defendant had waived his right to appeal as part of his plea agreement, it nonetheless caused defendant to be advised of that right.

On appeal, defendant maintains that he did not adequately waive his right to appeal and that his sentence was excessive. The People maintain that defendant's waiver was adequate and, as such, this Court is barred from reviewing his excessive sentence claim.

By now, it is beyond cavil that a defendant may, as part of a plea negotiation, waive his right to appeal from a judgment of conviction (see *People v Seaberg*, 74 NY2d 1 [1989]; *People v Moissett*, 76 NY2d 909 [1990]; *People v Calvi*, 89 NY2d 868 [1996]). Courts have determined that this right is not so fundamental that it can never be waived (see *People v Callahan*, 80 NY2d 273, 280 [1992]). Courts will uphold an appeal waiver as long as the defendant interposes it voluntarily, knowingly and intelligently, and as long as the trial court determines those requirements are met (see *People v Seaberg*, 74 NY2d at 11). It is also well settled that the court need not engage in any special litany during an allocution to obtain a valid guilty plea in which a defendant waives "a plethora of rights" (*Moissett*, 76 NY2d at 911; see also *Callahan*, 80 NY2d at 283; *Calvi*, 89 NY2d at 871).

I agree with the majority that the colloquy regarding defendant's waiver of his trial rights was a flawless example of a judicial inquiry. However, my disagreement with the majority arises from the following portion of the colloquy, which contains

the only record utterances regarding the waiver of defendant's separate *appellate rights*:

> "THE COURT: . . . Do you also understand that by pleading guilty you give up your right to appeal the conviction in this case? Do you understand that?
>
> "THE DEFENDANT: Yes."

While I also agree with the majority that there is no special script that a court must follow, this exchange between the court and defendant does not meet the tests set forth by the Court of Appeals that there be a "voluntary, knowing and intelligent" waiver (*Moissett*, 76 NY2d at 911); that there be "some judicial examination of the waiver itself with a manifestation expressed on the record, as may be appropriate, . . . necessary to show satisfaction of our protocols" (*Calvi*, 89 NY2d at 871); or that "the defendant's understanding of [the terms and conditions was] placed upon the record to facilitate appellate review" (*Seaberg*, 74 NY2d at 11). From this single judicial inquiry, one cannot determine if defendant understood what is meant by giving up the right to appeal or that it is not an automatic surrender, but rather a separate right that must be separately waived.

Upon review of this record, I do not find "an intentional relinquishment or abandonment of a known right" (*Johnson v Zerbst*, 304 US 458, 464 [1938]; *accord People v Harris*, 61 NY2d 9 [1983]). Here, there is only a single, perfunctory reference during defendant's plea allocution to his appeal waiver as part of the plea negotiation (*compare People v Cole*, 165 AD2d 737 [1990], *lv denied* 76 NY2d 1020 [1990] [waiver of right to appeal explicitly discussed with defendant, and his options were spelled out for him before he pleaded guilty]). Indeed, the record is silent as to whether defendant understood the implications of the waiver (*see People v Ramos*, 152 AD2d 209 [1989]; *see also People v McCaskell*, 206 AD2d 547 [1994], *lv denied* 84 NY2d 869 [1994] [although defendant apparently signed a waiver form in open court, defendant did not effectively waive his right to appeal where court made no record inquiry regarding whether defendant understood the implications of the waiver, whether he knew the waiver was part of plea bargain, and whether he in fact voluntarily agreed to it]; *People v Young*, 205 AD2d 568 [1994], *lv denied* 84 NY2d 835 [1994] [defendant did not effectively waive right to appeal where court made no inquiry on record as to whether she understood that waiver was part of her plea agreement or that she agreed to it knowingly, intelligently and voluntarily]).

At the very least, a court should conduct a brief separate inquiry regarding waiver of appellate rights. During this inquiry, the court should take a meaningful step to assure itself that defendant understands what it means to waive one's right to appeal. In addition, the court should avoid creating the impression that waiving the right to appeal is an automatic consequence of one's guilty plea. Finally, the court should ask defendant whether he or she understands and/or has discussed his appeal waiver with counsel.

Here, the record gives no assurance that defendant understood what it meant to give up his right to appeal. Furthermore, the waiver is intermingled with inquiries about defendant's surrender of the usual trial rights, erroneously creating the distinct impression that the loss of one's appeal right is an automatic, direct, and necessary consequence of a guilty plea (cf. *People v Seaberg*, 74 NY2d 1 [1989], *supra* [ample evidence in record that defendant agreed to bargain voluntarily with full appreciation of consequences], *and People v Brown*, 160 AD2d 1039 [1990] [defense counsel advised court that in accord with terms of plea agreement, defendant would waive right to appeal and affirmed that defendant understood he was receiving a substantial benefit of sentence reduction, and defendant, after discussion, agreed it was in his best interest to accept agreement and indicated his acceptance to plea terms including willingness to waive right to appeal]).

While an inquiry by the court itself is the far better practice, it is not necessarily required so long as the record, instead, adequately demonstrates at least that defense counsel has discussed the appeal waiver with defendant and defendant indicates that he understands what he is thereby giving up. Should there be any indication that defendant believes the law requires that appeal rights are automatically lost as a consequence of the guilty plea, the court should then clarify that an appeal waiver is a separate, negotiated consequence of a guilty plea.

A consistent practice of taking a brief moment or two to develop an adequate record for appellate review will first and foremost assure that defendants are voluntarily and knowingly giving up their right to appeal. Furthermore, it will likely eliminate or, at least, substantially curtail meritless appeals, a result that will spare valuable court resources in cases where, but for an adequate colloquy, review would be foreclosed. These goals can be easily accomplished in the overwhelming majority of

cases by an additional question or two in an otherwise complete record such as the one at bar.

Notwithstanding that I find this defendant's waiver of his right to appeal ineffective, I nonetheless concur that the judgment of conviction should be affirmed. The court sentenced defendant in accordance with his plea agreement and within the statutory guidelines (*see People v Rada*, 160 AD2d 552 [1990]), and in any event, the court imposed a sentence that is neither harsh nor excessive (*see People v Delgado*, 80 NY2d 780 [1992]; *People v Suitte*, 90 AD2d 80 [1982]).

TOM, J.P., NARDELLI and WILLIAMS, JJ., concur with SULLIVAN, J.; MARLOW, J., concurs in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered August 28, 2002, affirmed.